M. ANDERSON BERRY (262879)
aberry@justice4you.com
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829

TERENCE R. COATES (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 665-0204
Facsimile:  (513) 665-0219

*Attorney for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETHANY BUFFINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUNNING WAREHOUSE, LLC, TACKLE WAREHOUSE, LLC, TENNIS WAREHOUSE, LLC, and SKATE WAREHOUSE, LLC,<br><br>Defendants. | Case No.:  2:21-cv-09980<br>_____<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Bethany Buffington ("Plaintiff"), individually and on behalf of herself and all other persons similarly situated, brings this Class Action Complaint

against Running Warehouse, LLC, Tackle Warehouse, LLC, Tennis Warehouse, LLC, and Skate Warehouse, LLC ("Warehouses" or "Defendants"), and alleges, upon personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     Defendants run online websites that sell discount sporting goods in California, Florida and across and the United States.

2.     On or about December 16, 2021, Defendants began notifying customers and state Attorneys General about a widespread data breach that occurred on October 1, 2021 (the "Data Breach"). Hackers not only stole many of Defendants' customers' full names from the website, hackers also stole customers' personally identifiable information ("PII"), including addresses, payment card account numbers, card expiration dates, and card verification codes.  The hackers got everything they needed to illegally use Defendants customers' payment cards to make fraudulent purchases and to steal customers' identities. Defendants are not offering affected customers any identity protection services, which leaves affected customers unprotected from fraudulent activity stemming from the breach.

3.     All of this PII was compromised due to Defendants' negligent and/or careless acts and omissions and the failure to protect customers' data.  In addition to their failure to prevent the Data Breach, Defendants failed to detect and report the breach for months.

4.     According to Defendants, on October 15, 2021 they became aware of the Data Breach when an unauthorized third party gained access and obtained payment card information from Defendants' websites – most likely from a common e-commerce platform shared by Defendants.

5.     The stolen PII has great value to hackers due to its thoroughness and the numbers involved.  It is likely that hackers stole the full payment card information for almost two million customers.  For example, the Maine Attorney

CLASS ACTION COMPLAINT

General reports that the Data Breach affected 1,813,224 persons.[1]

6. Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect its users' PII, (ii) warn users of their inadequate information security practices, and (iii) effectively monitor their websites and e-commerce platform for security vulnerabilities and incidents. Defendants' conduct amounts to negligence and violates federal and state statutes.

7. Plaintiff and similarly situated customers ("Class Members") have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the present and certainly increased risk to their PII, which (a) may remain available on the dark web for individuals to access and abuse, and (b) remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

## JURISDICTION & VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant. Defendant Running Warehouse, LLC's California Secretary of State business filings indicate that its three members

---

[1] *See Data Breach Notifications,* OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/5646791e-9065-46de-8721-6e5536f24853.shtml (last visited Dec. 28, 2021). Note that the notices for each Defendant admit that the total number of persons impacted by the Data Breach is the same; i.e., 1,813,224.

CLASS ACTION COMPLAINT

reside in the State of California: Drew Munster, Joe Rubio, and Mark Sczbecki, each of whom are California residents and list 181 Suburban Road, Suite 120, San Luis Obispo, California 93401 as their address.[2] Defendant Skate Warehouse, LLC's California Secretary of State business filings indicate that its three members reside in the State of California: Mark Sczbecki, David Stubbs, and Stephan Garcia, each of whom are California residents and list 181 Suburban Road, San Luis Obispo, California 93401 as their address.[3] Defendant Tennis Warehouse, LLC is operated by Sports Warehouse Properties, LLC. According to Sports Warehouse Properties, LLC's California Secretary of State business filings, it has three members all of with an address of 191 Suburban Road, San Luis Obispo, CA 93401: Drew Munster, Ziyad Naccasha, and Mark Sczbecki.[4] Tackle Warehouse, LLC is operated by Wilderness Sports Warehouse, LLC. According to Wilderness Sports Warehouse, LLC's California Secretary of State business filings, it has three members all of with an address of 191 Suburban Road, San Luis Obispo, CA 93401: Mark Sczbecki, Drew Munster, and Richard Zeilenga. Accordingly, minimal diversity under 28 U.S.C. § 1332(d) exists in this case because Plaintiff is a resident of Florida and the members of Defendants in California.[5] Moreover, this Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because Plaintiff Buffington is a Florida citizen and therefore diverse from Defendant, which is not a citizen of Florida.

---

[2] Running Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200520110180-2195068 (last visited on Dec. 28, 2021).

[3] Skate Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200225610057-21246891 (last visited on Dec. 28, 2021).

[4] Tennis Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200721410200-23235467 (last visited on Dec. 28, 2021).

[5] Tackle Warehouse, LLC:
https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=200225610016-22878036 (last visited on Dec. 28, 2021).

CLASS ACTION COMPLAINT

9.     This Court has personal jurisdiction over Defendants because Defendants have systematic and continuous contacts with the state through their websites and because their headquarters are located in California and this District.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in, were directed to, and/or emanated from this District.  Defendant resides within this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district.

## PARTIES

11.     Plaintiff Bethany Buffington is a citizen of Florida residing in Volusia County, Florida. Ms. Buffington used Defendant's website on or about November 30, 2020, to purchase running shoes. On December 9, 2021, she discovered fraudulent charges on her bank account which were the result of the Data Breach. She was notified by Defendants via email on December 27, 2021, that she was impacted by the Data Breach.

12.     Defendants are California corporations with their principal place of business in San Luis Obispo, California. During the relevant time, Defendants operated across the United States through their websites.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Background

13.     Defendants assure their customers that they are concerned about PII security and claim that they use "commercially reasonable ethical, physical, managerial, and technical safeguards to preserve the integrity and security of your personal information consistent with industry standards."[6]

14.     Defendant does not claim that it abides by the Payment Card Industry Data Security Standard ("PCI DSS") compliance, which is a requirement for businesses that store, process, or transmit payment card data.

---

[6] *See Privacy Policy*, https://www.runningwarehouse.com/privacypolicy.html (last visited Dec. 28, 2021).

CLASS ACTION COMPLAINT

15.    The PCI DSS defines measures for ensuring data protection and consistent security processes and procedures around online financial transactions. Businesses that fail to maintain PCI DSS compliance are subject to steep fines and penalties.

16.    As formulated by the PCI Security Standards Council, the mandates of PCI DSS compliance include, in part: Developing and maintaining a security policy that covers all aspects of the business, installing firewalls to protect data, and encrypting cardholder data that is transmitted over public networks using anti-virus software and updating it regularly.

17.    To purchase items on Defendants' websites, customers, at a minimum, are required to enter the following PII onto the website:

- Name;
- billing address;
- shipping address;
- email address;
- name on the payment card;
- type of payment card;
- full payment card number;
- payment card expiration date; and
- security code or CVV code (card verification number).

***The Data Breach***

18.    Starting on or about December 16, 2021, Defendants sent customers via email and mail a "Notice of Data Breach."  The notice informed affected customers that:

***What Happened?***

On October 15, 2021 [Defendants] became aware of a potential data security incident . . .  On November 6, 2021, the investigation determined that payment card information was obtained without authorization on October 1, 2021. On November 29, 2021, the

6

CLASS ACTION COMPLAINT

investigation determined that your payment card information may have been affected during the incident.

***What Information was Involved?***

The incident may have involved payment card information, including your name, address, payment card number, expiration date, and payment card security code.[7]

19. Defendant's notice to the state Attorneys General also provided this same information.[8]

20. Defendant failed to use encryption to protect sensitive information transmitted online, and unauthorized individuals accessed Defendant's customers' unencrypted, unredacted information, including name, address, email address, and payment card information, which includes payment card number, CVV code, expiration date, and possibly more.[9]

***Value of Personally Identifiable Information***

21. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. Experian reports that a stolen credit or debit card number can sell for $5-

---

[7] https://apps.web.maine.gov/online/aeviewer/ME/40/5646791e-9065-46de-8721-6e5536f24853/bb36a1a3-b5e3-47b2-b2b4-c9e3e70a59c2/document.html (last visited Dec. 28, 2021)

[8] https://oag.ca.gov/ecrime/databreach/reports/sb24-548688 (last visited Dec. 28, 2021).

[9] *Id*. It is clear that the information exposed in the Data Breach was unencrypted: California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendants notified the California Attorney General of the Data Breach on Dec. 18, 2021, evidencing that the exposed data was unencrypted.

CLASS ACTION COMPLAINT

110 on the dark web.  Criminals can also purchase access to entire company data breaches from $900 to $4,500.

22.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on its customers as a result of a breach. Defendants were, or should have been, fully aware of the significant volume of daily credit and debit card transactions on its website amounting to potentially hundreds of thousands of payment card transactions, and thus, the significant number of individuals who would be harmed by a breach of Defendants' systems.

### *Plaintiff Buffington's Experience*

23.    Plaintiff Bethany Buffington placed an order for running shoes on or about November 30, 2020. She checked out using her debit card. On December 27, 2021, she received an email from Defendants entitled "Notice of data security incident," indicating her PII was exposed by Defendants, including "payment card information, including your name, address, payment card number [], expiration date, and payment card security code." This is the same debit card she used to purchase the running shoes.

24.    On the payment platform, Ms. Buffington entered her PII: name, address, payment card type and full number, CVV security code, payment card expiration date, and email address. During this transaction, Ms. Buffington does not recall if she was asked to "agree" to any "Terms of Service" or to review the "Privacy Policy."

25.    On or about December 9, 2021, unauthorized charges were made on Ms. Buffington's debit card. Her bank contacted her regarding the fraudulent activities.

26.    Her bank changed the debit card number in response to the illegal charges and mailed Ms. Buffington a new card, which she has not yet received. In

CLASS ACTION COMPLAINT

response the Data Breach notice and the fraud, Ms. Buffington had to take time out of her day to deal with the charges and the account number change.  She also researched credit monitoring options, changed all her online passwords, and instituted multi-factor authentication options where possible. This was time she otherwise would have spent performing other activities, such as her job and/or leisure activities for the enjoyment of life. She also will need to use alternative methods of payment until she receives her new debit card.

27.    Knowing that a hacker stole her PII, and that her PII may be available for sale on the dark web, has caused Ms. Buffington great concern. She is now very concerned about payment card theft and identity theft in general. This breach has given Ms. Buffington hesitation about using Defendants' online services, and reservations about shopping on other online websites.

28.    Now, due to Defendants' misconduct and the resulting Data Breach, hackers obtained her PII at no compensation to Ms. Buffington whatsoever. That is money lost for her, and money gained for the hackers – who could sell her PII on the dark web.

29.    Ms. Buffington also suffered actual injury and damages in paying money to, and purchasing products from, Defendants' website during the Data Breach, expenditures which she would not have made had Defendants disclosed that they lacked computer systems and data security practices adequate to safeguard customers' PII from theft.

30.    Moreover, Ms. Buffington suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

31.    Ms. Buffington has a continuing interest in ensuring her PII, which remains in Defendants' possession, is protected and safeguarded from future breaches.

CLASS ACTION COMPLAINT

*Plaintiff Buffington's Efforts to Secure PII*

32.     Defendants' Data Breach caused Ms. Buffington harm.

33.     Prior to the activity described above during the period in which the Data Breach occurred, the debit card that Ms. Buffington used to purchase products on Defendants' website had never been stolen or compromised. Ms. Buffington reviewed her credit accounts and other financial statements routinely and to her knowledge this card had not been compromised in any manner.

34.     Additionally, Ms. Buffington never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

35.     Ms. Buffington stores any and all electronic documents containing her PII in a safe and secure location, and shreds any documents she receives in the mail that contain any of her PII, or that may contain any information that could otherwise be used to compromise her debit card.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this nationwide class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and on behalf of all members of the following class:

> All individuals whose PII was compromised in the data breach announced by Defendants on or about December 16, 2021 (the "Class").

37.     Plaintiff also seeks certification of a Florida sub-class defined as follows:

> All individuals residing in the State of Florida whose PII was compromised in the data breach announced by Defendants on or about December 16, 2021 (the "Florida Class")

38.     Collectively the Class and the Florida Class are referred to as the "Classes."

39.     Excluded from the Classes are the following individuals and/or entities: Defendants and its parents, subsidiaries, affiliates, officers and directors, current or

CLASS ACTION COMPLAINT

former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

40.    Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

41.    **Numerosity**: The Classes are so numerous that joinder of all members is impracticable. Defendants have identified 1,813,224 customers whose PII may have been improperly accessed in the data breach, and the Classes are apparently identifiable within Defendants' records.

42.    **Commonality**: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

   a. When Defendants actually learned of the data breach and whether the response was adequate;

   b. Whether Defendants owed a duty to the Classes to exercise due care in collecting, storing, safeguarding and/or obtaining their PII;

   c. Whether Defendants breached that duty;

   d. Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' PII;

   e. Whether Defendants acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' PII;

   f. Whether Defendants knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII secure and prevent loss or misuse of that PII;

   g. Whether Defendants adequately addressed and fixed the vulnerabilities

which permitted the data breach to occur;

h. Whether Defendants caused Plaintiff's and Class Members damages;

i. Whether Defendants violated the law by failing to promptly notify Class Members that their PII had been compromised;

j. Whether Plaintiff and the other Class Members are entitled to credit monitoring and other monetary relief;

43. **Typicality**: Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendants' misfeasance.

44. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions.

45. **Superiority and Manageability**: Under Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Individual damages for any individual Class Member are likely to be insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' misconduct would go unpunished. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

46. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

47. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties'

CLASS ACTION COMPLAINT

interests therein.  Such particular issues include, but are not limited to:

    a.  Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    b.  Whether Defendants breached a legal duty to Plaintiff and the Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

    c.  Whether Defendants failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach; and

    e.  Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendants' wrongful conduct.

## FIRST CLAIM FOR RELIEF
### Negligence
### (On Behalf of Plaintiff and the Class)

48.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 47.

49.    Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, using, and protecting their PII from unauthorized third parties.

50.    The legal duties owed by Defendants to Plaintiff and Class Members include, but are not limited to the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII of Plaintiff and Class Members in their possession;

    b.  To protect PII of Plaintiff and Class Members in their possession using

CLASS ACTION COMPLAINT

reasonable and adequate security procedures that are compliant with industry-standard practices; and

c.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and Class Members of the Data Breach.

51.   Defendants' duty to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interested and enforced by the FTC, the unfair practices of failing to use reasonable measures to protect PII by companies such as Defendants.

52.   Various FTC publications and data security breach orders further form the basis of Defendants' duty. Plaintiff and Class Members are consumers under the FTC Act. Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with industry standards.

53.   Defendants breached their duties to Plaintiff and Class Members. Defendants knew or should have known the risks of collecting and storing PII and the importance of maintaining secure systems.

54.   Defendants knew or should have known that their security practices did not adequately safeguard Plaintiff's and the other Class Members' PII, including, but not limited to, the failure to detect the data breach the moment it happened.

55.   Through Defendants' acts and omissions described in this Complaint, including Defendants' failure to provide adequate security and their failure to protect the PII of Plaintiff and the Class from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII during the period when it was within Defendants' possession and control.

56.   Defendants breached the duties they owed to Plaintiff and Class

CLASS ACTION COMPLAINT

Members in several ways, including:

    a. Failing to implement adequate security systems, protocols, and practices sufficient to protect customers' PII and thereby creating a foreseeable risk of harm;

    b. Failing to comply with the minimum industry data security standards during the period of the data breach (e.g., There is no indication that Defendants' e-commerce platform is PCI DSS compliant and encrypts customers' order information, such as name, address, and credit card number, during data transmission, which did not occur here);

    c. Failing to act despite knowing or having reason to know that Defendants' systems were vulnerable to a data breach (e.g., Defendants did not detect the data breach for almost two weeks); and

    d. Failing to timely and accurately disclose to customers that their PII had been improperly acquired or accessed and was potentially available for sale to criminals on the dark web (e.g., More than two months went by before Defendants notified customers of the data breach).

57. Due to Defendants' conduct, Plaintiff and Class Members are entitled to credit monitoring. Ongoing credit monitoring is reasonable here. The PII taken can be used towards identity theft and other types of financial fraud against the Class Members. Hackers not only stole many of Defendants customers' names from the website, they also stole customers' billing and shipping addresses, payment card numbers, CVV codes, and payment card expiration dates. They got everything they need to illegally use Defendants customers' credit cards to make illegal purchases. There is no question that this PII was taken by sophisticated cybercriminals, increasing the risks to the Class Members. The consequences of identity theft are serious and long-lasting. There is a benefit to early detection and monitoring.

58. Some experts recommend that data breach victims obtain credit monitoring services for at least ten years following a data breach. Annual subscriptions for credit monitoring plans range from approximately $219 to $358

CLASS ACTION COMPLAINT

per year.

59.     As a result of Defendants' negligence, Plaintiff and Class Members suffered injuries that include: (i) the lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the data breach, including but not limited to time spent deleting phishing email messages and cancelling credit cards believed to be associated with the compromised account; (iv) the continued risk to their PII, which may remain for sale on the dark web and is in Defendant's possession, subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers and former customers in their continued possession; and (v) future costs in terms of time, effort, and money that will be expended to prevent, monitor, detect, contest, and repair the impact of the PII compromised as a result of the data breach for the remainder of the lives of Plaintiff and Class Members, including ongoing credit monitoring.

60.     These injuries were reasonably foreseeable given the history of security breaches of this nature.  The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Defendants' negligent conduct.

**SECOND CLAIM FOR RELIEF**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

61.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 60.

62.     Defendants owe duties of care to Plaintiff and Class Members which would require them to adequately secure PII.

63.     Defendants still possess PII regarding Plaintiff and Class Members.

64.     Although Defendants claim that they take the security of personal information very seriously and "have worked closely with the digital forensics firm

CLASS ACTION COMPLAINT

to enhance the security of our sites to facilitate safe and secure transactions" there is no detail on what, if any, fixes have really occurred.[10]

65.    Plaintiff and Class Members are at risk of harm due to the exposure of their PII and Defendants' failure to address the security failings that lead to such exposure.

66.    There is no reason to believe that Defendants' security measures are any more adequate than they were before the breach to meet Defendants' contractual obligations and legal duties, and there is no reason to think Defendants have no other security vulnerabilities that have not yet been knowingly exploited.

67.    Plaintiff, therefore, seek a declaration that (1) Defendants' existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' personal information, and (2) to comply with its explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

a. Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

c. Auditing, testing, and training its security personnel regarding any new or modified procedures;

d. Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised,

---

[10] https://oag.ca.gov/system/files/Consumer%20Notification%20Template.pdf (last visited Dec. 28, 2021)

CLASS ACTION COMPLAINT

hackers cannot gain access to other portions of Defendants' systems;

e.  Conducting regular database scanning and securing checks;

f.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

g.  Purchasing credit monitoring services for Plaintiff and Class Members for a period of ten years; and

h.  Meaningfully educating its users about the threats they face as a result of the loss of their PII to third parties, as well as the steps Defendants' customers must take to protect themselves.

### THIRD CLAIM FOR RELIEF
**Violations of the Florida Unfair and Deceptive Trade Practices Act,**
**Fla. Stat. §§ 501.201, *et seq.***
**(On Behalf of Plaintiff and the Florida Subclass)**

68.  Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 47.

69.  Plaintiff and Class Members purchased items from Defendants for personal, family, or household purposes.

70.  Defendants engaged in transactions and conduct to procure items on behalf of Plaintiff and Class Members.

71.  Defendants engaged in trade and commerce through its acts and omissions and its course of business, including marketing, offering to sell, and selling sporting goods throughout the United States.

72.  Defendants violated Fla. Stat. section 501.204(1) by engaging in deceptive, unfair, and unlawful trade acts or practices while conducting trade or commerce in Florida. Defendants' violations include, but are not limited to:

a.  A failure to safeguard customer PII through data security practices and computer systems;

18

CLASS ACTION COMPLAINT

b. A failure to disclose that their computer systems and data security practices were inadequate to protect PII;

c. A failure to notify Plaintiff and Class Members in a timely manner of the data breach;

d. A failure to stop accepting and storing PII after the Defendants knew or should have known that the vulnerabilities were exploited in a data breach; and

e. A failure to remediate the vulnerabilities that allowed the Data Breach to happen.

73. These unfair acts and practices violate the duties imposed by, but not limited to, the FTCA and Fla. Stat. section 501.171(2).

74. As a direct result of these violations, Plaintiff and Class Members suffered damages. These damages include, but are not limited to:

a. Lost time spent constantly checking their credit for unauthorized activity, which is necessary to do to protect themselves from the consequences of having their PII available on the dark web because of the Data Breach; and

b. Other economic damage that may not be detected for years to come.

75. Plaintiff and Class Members are entitled to damages as well as injunctive relief because of Defendants' knowing violation of Florida Unfair and Deceptive Trade Practices Act. These include, but are not limited to, ordering that Defendants:

a. Utilize third-party security professionals to regularly test for security vulnerabilities;

b. Utilize third-party security professionals and internal personnel to perform automated security monitoring;

CLASS ACTION COMPLAINT

c.  Train security personnel on how to audit and test any new or modified security protocols;

d.  Protect patient data by securing it separately from other portions of the network;

e.  Delete patient PII that is no longer necessary to provide services;

f.  Conduct regular database security checks;

g.  Provide regular training to internal security personnel on how to identify and contain a breach and what to do when a breach occurs; and

h.  Educate patients about the threats they face now that their PII is available to unauthorized third parties and steps that patients can take to protect themselves.

76.  Plaintiff brings this action on behalf of herself and Class Members for the relief requested above. This action will also protect the public from Defendants unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices.

77.  The deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. The acts caused substantial injury to Plaintiff and Class Members that they could not reasonably avoid and the injuries suffered outweigh any benefit to patient-consumers or to competition.

78.  Defendants knew or should have known that the computer systems and data security protocols were inadequate to store sensitive PII, which put the data at an increased risk of theft or breach.

79.  Defendants' unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless.

80.  Plaintiff and Class Members seek relief under the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201). The relief includes, but is

CLASS ACTION COMPLAINT

not limited to, damages, restitution, injunction relief, and/or attorney fees and costs, and any other just and proper relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all of the members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.  For an Order certifying the Class as defined herein and appointing Plaintiff and her Counsel to represent the Class;

B.  For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

C.  For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.  prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    ii.  requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.  requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.  requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information

CLASS ACTION COMPLAINT

of Plaintiff and Class Members' PII;

v.  prohibiting Defendants from maintaining Plaintiff's and Class Members' PII on a cloud-based database;

vi.  requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix.  requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x.  requiring Defendants to conduct regular database scanning and securing checks;

xi.  requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.  requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it

CLASS ACTION COMPLAINT

occurs and what to do in response to a breach;

    xiii.   requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting PII;

    xiv.   requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

    xv.   requiring Defendants to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

    xvi.   requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and

    xvii.   for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.   For restitution and disgorgement of the revenues wrongfully obtained as a result of Defendants' wrongful conduct;

E.   For an award of actual damages, statutory damages and compensatory damages, in an amount to be determined at trial;

F.   For an award of costs of suit, litigation expenses and attorneys' fees, as

23

1  allowable by law; and

2  G.    For such other and further relief as this Court may deem just and proper.

3  ## **DEMAND FOR JURY TRIAL**

4  Plaintiff, on behalf of herself and all others similarly situated, hereby demands

5  a jury trial for all claims so triable.

6

7  DATED: December 29, 2021        **CLAYEO C. ARNOLD,**
                                   **A PROFESSIONAL LAW CORP.**

8

9                          By:    *M. Anderson Berry*

10                               M. ANDERSON BERRY

11                               M. ANDERSON BERRY (262879)
                                 aberry@justice4you.com
12                               865 Howe Avenue
                                 Sacramento, CA 95825
13                               Telephone: (916) 239-4778
                                 Facsimile: (916) 924-1829
14                               aberry@justice4you.com

15                               TERENCE R. COATES (*pro hac vice*
16                               forthcoming)
                                 **MARKOVITS, STOCK & DEMARCO,**
17                               **LLC**
                                 3825 Edwards Road, Suite 650
18                               Cincinnati, OH 45209
                                 Telephone: (513) 665-0204
19                               Facsimile:  (513) 665-0219
                                 tcoates@msdlegal.com

20

21                               ***Counsel for Plaintiff and the Class***

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT